IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **LEHI ROLLER MILLS CO., INC.,**<br><br>    Plaintiff,<br><br>vs.<br><br>**CAL-AGREX, INC.,**<br><br>    Defendant. | **MEMORANDUM DECISION<br>& ORDER**<br><br>Case No.  2:08CV291DAK |

    This matter is before the court on Defendant Cal-Agrex's Motion to Dismiss.  The court held a hearing on the motions on October 8, 2008.  At the hearing, Plaintiff was represented by Sterling A. Brennan, and Defendant was represented by Tracy E. Reichmuth and Elaina M. Maragakis.  The court has carefully considered the pleadings and memoranda submitted by the parties as well as the law and facts relating to the motion.  Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

    On August 1, 2006, LRM entered into a contract with Cesar Diomampo for the sale of 300 truckloads of non-fat dry milk ("the Agreement").  Under the terms of the Agreement, LRM agreed to ship 15 to 20 truckloads of non-fat dry milk to Diomampo on a weekly basis, and Diomampo agreed to pay LRM $.60 per pound of dry milk.  Diomampo was a resident of the Philippines.  Rather than ship the milk to the Philippines, Diomampo instructed LRM to ship the

dry milk to another company in the United States, Cal-Agrex. In accordance with these instructions, LRM shipped a total of 67 truckloads to Cal-Agrex.

LRM communicated directly with Cal-Agrex for the shipments. Cal-Agrex made special requests of LRM for the packaging and labeling of the dry milk bags and containers. Cal-Agrex accepted all of the shipments. Although LRM was to receive wire payment for the truckloads of dry milk shipped to Cal-Agrex, Diomampo failed to make any of the payments. The required payments totaled $1,661,707.20.

On December 1, 2006, LRM commenced the present action against Diomampo and his company, Asian Trade. The Complaint alleged claims for breach of contract and unjust enrichment and requested a declaratory judgment that LRM was not required to ship any additional truckloads of dry milk under the Agreement given the default. LRM served Diomampo, but he did not respond to the Complaint. Accordingly, on January 22, 2007, LRM received a certificate of default from the Clerk of Court. Diomampo did not take any action to set aside the default so LRM moved for default judgment. On June 27, 2007, the court entered default judgment against Diomampo in the amount of $1,661,707.20 plus costs.

LRM conducted discovery while attempting to enforce its judgment against Diomampo. This discovery included a third-party deposition of Cal-Agrex and its principals. LRM also obtained document discovery from Cal-Agrex. LRM claims that through this discovery it learned that Cal-Agrex and Diomampo have a close, established business relationship. LRM contends that Diomampo was acting as an undisclosed agent for Cal-Agrex with respect to the acquisition of the dry milk from LRM and that he was acting in concert with the principals of Cal-Agrex to avoid payment to LRM. The discovery showed that Cal-Agrex

received all of the shipments of the dry milk but made no payment to Diomampo, Asian Trade, or LRM.  Cal-Agrex sold these same truckloads of dry milk to third parties for a substantial profit.  LRM contends that apart from acting as signatory of the Agreement, Diomampo had no further role in receiving the dry milk powder.

On April 17, 2008, as a result of this discovery, LRM commenced an action against Cal-Agrex alleging unjust enrichment.  That action was assigned to Senior Judge Bruce Jenkins, who consolidated the action into LRM's action against Diomampo and Asian Trade.  Neither party asserts that there is a contractual agreement between LRM and Cal-Agrex.

## DISCUSSION

### Defendant's Motion to Dismiss

Defendant Cal-Agrex seeks dismissal of LRM's Complaint on two grounds.  First, Cal-Agrex argues that LRM's Complaint fails to state a claim for unjust enrichment because LRM has failed to allege that it is inequitable for Cal-Agrex to retain the benefit it received from the LRM/Diomampo Agreement.  Second, Cal-Agrex contends that LRM's claim for unjust enrichment should be dismissed because LRM has already obtained judgment against Diomampo, who was the party to the contract.

In order to state a claim for unjust enrichment, LRM must demonstrate that (1) LRM conferred a benefit upon Cal-Agrex, (2) Cal-Agrex was aware of the benefit, and (3) Cal-Agrex retained the benefit under such circumstances as to make it inequitable for it to retain the benefit without payment of its value.  *Knight v. Post,* 748 P.2d 1097, 1100 (Utah 1988).

**A.  Inequitable Circumstances**

The dispute between the parties in this case focuses on the third element–whether

it is inequitable for Cal-Agrex to retain the benefit it received. To assert that it is not inequitable for it to retain the profits of the dry milk without paying for the dry milk, Cal-Agrex relies on cases recognizing that it is not inequitable for a third party to retain benefits obtained pursuant to contract simply because a party to the contract does not perform its obligations under that contract. *See Commercial Fixtures & Furnishings, Inc. v. Adams*, 564 P.2d 773, 774 (Utah 1977). In *Commercial Fixtures*, a building supplies manufacturer alleged that it had contracted with a tenant to supply materials that were incorporated into the tenant's leased property. *Id.* After the tenant failed to pay for the materials and defaulted on its lease with the landlord, the supplier sued the landlord alleging that the landlord was unjustly enriched by the addition of plaintiff's materials to the leased space. *Id.* In affirming the trial court's grant of summary judgment in favor of the defendant landlord, the court held that "the mere fact that a third person benefits from a contract between two others does not make such third person liable in quasi-contract, unjust enrichment, or restitution." *Id.* The court required there to "be some misleading act, request for services, or the like, to support such an action." *Id.*

Cal-Agrex contends that, as in *Commercial Fixtures*, LRM cannot state a claim for unjust enrichment based simply on the allegation that Diomampo defaulted on the Agreement or that Cal-Agrex derived a benefit. This argument, however, fails to recognize that LRM alleges that Diomampo was an undisclosed agent for Cal-Agrex and that Diomampo and Cal-Agrex collaborated to avoid payment to FRM. These factual allegations distinguish this case from *Commercial Fixtures*. Courts have recognized that "[t]he facts underlying unjust enrichment claims vary greatly from case to case, and the doctrine of unjust enrichment was specifically developed to address situations that did not fit within a particular legal standard but which

nonetheless merited judicial intervention." *Allen v. Hall*, 148 P.3d 939, 945 (Utah 2006). Allegations of a principal using an undisclosed agent to avoid payment for materials is significantly different than a landlord who is residually benefitted from an improved space to lease.

In addition, the *Commercial Fixtures* case was decided on summary judgment and was not addressing the pleading requirements for an unjust enrichment claim under Rule 12(b)(6). The facts alleged in LRM's Complaint adequately put Cal-Agrex on notice of inequitable conduct. At the pleading and motion to dismiss stage, LRM is not required to present all of the underlying factual support.

Even if the court applied *Commercial Fixtures* in such a way as to require LRM to show some misleading acts or requests for services in order to meet the third element of an unjust enrichment claim, the allegations of the Complaint meet the test. The Complaint alleges that Diomampo was an undisclosed agent acting on behalf of Cal-Agrex in dealings with LRM. The Complaint also alleges that Cal-Agrex received all of the dry milk at issue and did not make payment to Diomampo for the dry milk it received. Both Cal-Agrex's and Diomampo's failure to disclose Diomampo's role as an agent for Cal-Agrex misled LRM into believing that Diomampo was the buyer when, in fact, Cal-Agrex was the actual buyer. While it was clear to LRM from Diomampo's instructions to have the dry milk shipped directly to Cal-Agrex that Cal-Agrex was the intended recipient of the dry milk, the natural assumption would have been that Cal-Agrex was Diomampo's customer. Diomampo would have paid LRM and Cal-Agrex would have paid Diomampo. The fact that Cal-Agrex made no payments to Diomampo clearly raises questions of inequitable conduct sufficient to state a claim at the pleading and motion to dismiss

stage. These facts support LRM's assertion that Cal-Agrex and Diomampo collaborated with one another to develop an elaborate scheme to obtain dry milk powder from LRM and later to avoid payment to LRM for the dry milk. The court concludes that LRM has pled sufficient allegations and supporting facts to state an unjust enrichment claim. Cal-Agrex's assertion that Diomampo did not act as an agent of Cal-Agrex with regard to his dealings with LRM is a factual contention that can be explored in discovery.

**B. Election of Remedies**

Next, Cal-Agrex argues that principles of equity should not allow LRM to obtain a judgment against Cal-Agrex for the same amount as the judgment it has already obtained against Diomampo. LRM admits that it has already obtained judgment against Diomampo for the exact amount it seeks from Cal-Agrex.

Cal-Agrex contends that it is not equitable for LRM to seek this kind of double recovery. *See Brigham City Sand & Gravel v. Machine Ctr., Inc.*, 613 P.2d 510 (Utah 1980). In *Brigham City Sand*, the court held that the plaintiff was not entitled to recover property from a subsequent purchaser where it had already obtained a settlement from the initial purchaser for the value of the property. *Id.* at 512. The doctrine of election of remedies is based upon principles of equity and prevents a party from recovering more than once for the same loss. *Id.*

LRMm however, contends that recovery against Cal-Agrex would not be duplicative because LRM did not make an election of remedies when it pursued its claim against Diomampo and obtained a default judgment against him. To invoke the doctrine of election of remedies, three requirements must be met: (1) the existence of two or more remedies; (2) an inconsistency between the remedies; and (3) the choice, with knowledge of the facts, of one of

several remedies.  *Sade v. Northern Natural Gas Co.*, 483 F.2d 230, 234 (10th Cir. 1973).

The third element for applying the election of remedies doctrine is missing in this case.  For LRM to have elected a remedy, the choice "must [have been] decisive and unequivocal*.*"  *Estate Counseling Serv. Inc v. Merrill Lynch*, 303 F.2d 527, 530-31 (10th Cir. 1962).  LRM argues that it could not have made, and did not make, any such decision when it brought its claim for breach of contract against Diomampo because it did not learn of the specifics of Cal-Agrex's relationship with Diomampo, or the facts underlying its claim against Cal-Agrex, until it was conducting discovery to enforce the default judgment against Diomampo.  Cal-Agrex conteds that LRM knowingly dealt with Cal-Agrex.  This argument, however, ignores the fact that LRM was not aware of the alleged agent/principal relationship between Diomampo and Cal-Agrex at the time it was dealing with Cal-Agrex or at the time LRM brought its action against Diomampo.   Therefore, the election of remedies doctrine does not apply to bar LRM's claim against Cal-Agrex because LRM did not knowingly choose one remedy over the other.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is DENIED.

DATED this 9th day of October, 2008.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge