**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **LEHI ROLLER MILLS CO., INC.,** | |
| **Plaintiff,** | **MEMORANDUM DECISION** |
| **vs.** | **& ORDER** |
| **CAL-AGREX, INC.,** | **Case No.  2:06CV1001DAK** |
| **Defendant.** | |

This matter is before the court on Counter Defendant Lehi Roller Mills and Third-Party Defendant Jerry Goodwin's Joint Motion to Dismiss Cal-Agrex, Inc.'s Counterclaim and Third-Party Claim.  The court held a hearing on the motion on February 10, 2009.  At the hearing, Plaintiff was represented by Sterling A. Brennan and Janna Lewis, and Defendant was represented by Tracy E. Reichmuth and Elaina M. Maragakis.  The court has carefully considered the pleadings and memoranda submitted by the parties as well as the law and facts relating to the motion.  Now being fully advised, the court renders the following Memorandum Decision and Order.

**BACKGROUND**

On August 1, 2006, LRM entered into a contract with Cesar Diomampo for the sale of 300 truckloads of non-fat dry milk ("the Agreement").  Under the terms of the Agreement, LRM agreed to ship 15 to 20 truckloads of non-fat dry milk to Diomampo on a weekly basis, and

Diomampo agreed to pay LRM $.60 per pound of dry milk.  Diomampo was a resident of the Philippines.  Rather than ship the milk to the Philippines, Diomampo instructed LRM to ship the dry milk to another company in the United States, Cal-Agrex.  In accordance with these instructions, LRM shipped a total of 67 truckloads to Cal-Agrex.

Although LRM was to receive wire payment for the truckloads of dry milk shipped to Cal-Agrex, Diomampo failed to make any of the payments.  The required payments totaled $1,661,707.20.  On December 1, 2006, LRM commenced the present action against Diomampo and his company, Asian Trade.  The Complaint alleged claims for breach of contract and unjust enrichment and requested a declaratory judgment that LRM was not required to ship any additional truckloads of dry milk under the Agreement given the default.  Diomampo did not respond to the Complaint.  On January 22, 2007, LRM received a certificate of default from the Clerk of Court.  Diomampo did not take any action to set aside the default, and LRM moved for default judgment.  On June 27, 2007, the court entered Judgment against Diomampo in the amount of $1,661,707.20 plus costs.  The Judgment also granted LRM's request for declaratory judgment that it was not required to ship any additional truckloads of dry milk under the Agreement.

While attempting to enforce its judgment against Diomampo. LRM gained information regarding Cal-Agrex that prompted it to file an action against Cal-Agrex alleging unjust enrichment.  That action was consolidated into LRM's action against Diomampo and Asian Trade.

Cal-Agrex moved to dismiss the case, and this court denied the motion.  Cal-Agrex then answered the Complaint and asserted a Counterclaim against LRM.  Cal-Agrex also

brought a Third-Party Complaint against LRM's supplier, Jerry Goodwin.  The Counterclaim and Third-Party Complaint assert claims for intentional interference with contract and intentional interference with prospective economic advantage.

Cal-Agrex alleges in its counterclaim that it entered into an oral agreement with Diomampo in the spring of 2006 to purchase all quantities of nonfat dry milk that Diomampo would acquire from LRM.  Based on that oral agreement, Cal-Agrex entered into numerous agreements with customers in the United States and overseas to sell nonfat dry milk.  Cal-Agrex claims that LRM knew that it was reselling the milk it received from Diomampo.

Cal-Agrex contends that on October 16, 2006, LRM's president, Sherman Robinson, contacted Diomampo.  Robinson stated that Jerry Goodwin, LRM's supplier, was surprised that the quantity of the August 1, 2006 contract was 300 loads and that LRM would be short of the dry milk.  When Diomampo responded the next day stating that the milk had already been resold and the quantity in the contract had to be fulfilled, LRM replied that the USDA had raided LRM's warehouse and seized 200 loads of dry milk.

Cal-Agrex contends that LRM's claim regarding the raid is false and that LRM sold its remaining 233 loads of dry milk to other parties to get a higher price.  LRM, however, responds that the USDA's diversion and deprivation of the dry milk forms the basis, in part, of a lawsuit it filed on August 22, 2008, against the United States of America in the Western District of Missouri.  Cal-Agrex claims that LRM never recovered the 200 loads of dry milk and never tried to obtain dry milk from another source so that it could fulfill its obligation under the August 1, 2006 Agreement.

Cal-Agrex, however, acknowledges that during October and November 2006,

3

LRM made scheduled shipments of dry milk under the Agreement. Cal-Agrex states that it would be only a matter of weeks before LRM could no longer supply dry milk according to the schedule under the August 1, 2006 Agreement.  Cal-Agrex claims that LRM's communications stating that it would ultimately be short of dry milk constituted an anticipatory breach of the August 2006 Agreement. Cal-Agrex further alleges that when it advised its customers that its supplier could not supply the promised loads, its customers began withholding payments to Cal-Agrex.

Cal-Agrex also acknowledges Diomampo owed LRM payment for the shipments LRM had already made. Cal-Agrex alleges that Diomampo agreed to repay the amount due in installments if LRM provided the remaining 233 truckloads to be delivered under the contract. LRM did not accept his proposal.  On November 14, 2006, Diomampo informed Robinson that he could not make additional payments given the constraints being placed on him.

LRM's attorney sent Diomampo a letter accusing him of breaching the August 1, 2006 Agreement and threatening to withhold delivery of the 233 loads due under the contract unless Diomampo prepaid for the remaining loads.  On November 17, 2006, Diomampo offered to pay the past due amount if LRM would obtain a security bond to protect him in the event of a further breach or, alternatively, to open an irrevocable letter of credit in the full amount due and to repay all amounts owing installments of LRM met its obligation to deliver the remaining dry milk.  LRM rejected both proposals and demanded immediate payment.

Cal-Agrex contends that LRM intentionally sought to injure it by withholding shipment of the remaining loads and such actions damaged Cal-Agrex's contracts and business relationships with its customers.

4

**DISCUSSION**

**Motion to Dismiss Counterclaim and Third Party Claim**

LRM seeks dismissal of Defendant Cal-Agrex's counterclaim and third-party complaint because Cal-Agrex's intentional interference claims are at odds with this court's Judgment against Diomampo.  The Judgment against Diomampo orders Diomampo to pay LRM for the 67 loads it had already shipped to him under the August 1, 2006 Agreement and declares that LRM has no duty to ship any additional dry milk under the August 1, 2006 Agreement.  LRM further argues that Cal-Agrex has not alleged sufficient facts to suggest that LRM or Goodwin intentionally interfered with any existing or potential economic relations between Cal-Agrex and Diomampo for an improper purpose or by improper means.

Under Utah law, "[t]he tort of intentional interference with economic relations 'protects both existing contractual relationships and prospective relationships of economic advantage not yet reduced to a formal contract.'" *Gladwell v. Roadway Package Syst., Inc.*, 2005 WL 2001737, *5 (Utah 2005).  Therefore, Cal-Agrex must allege: (1) that LRM intentionally interfered with Cal-Agrex's existing or potential economic relations; (2) for an improper purpose or by improper means; and (3) causing injury to Cal-Agrex.  *Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1130 (10th Cir. 2003).

In this case, Cal-Agrex acknowledges that Diomampo owed LRM for the dry milk that LRM had already shipped under the August 1, 2006 Agreement when LRM ceased making shipments under the Agreement.  Cal-Agrex, however, bases its interference claims on its allegations that LRM acted wrongfully when it did not meet its contractual obligation to provide the additional dry milk to Diomampo.  Cal-Agrex claims that LRM sold the dry milk to another

customer for more money and falsely claimed that the USDA seized the missing dry milk. Cal-Agrex also claims that LRM's Ocotober email to Diomampo stating that it would have a shortage of dry milk was an anticipatory breach of the August 1, 2006 Agreement.

LRM asserts that Cal-Agrex's intentional interference claims cannot stand as a matter of law because the Judgment against Diomampo is conclusive as to the issues of breach of the August 1, 2006 Agreement. The Judgment found Diomampo in breach of the August 1, 2006 Agreement for failure to make payments and relieved LRM of fulfilling any further orders under the Agreement. LRM asserts that it cannot now be found to have breached the contract for failure to make shipments. Unlike other cases, LRM contends that these facts must be considered the law of the case because Judgment has already been entered to that effect.

Cal-Agrex argues that the default judgment LRM obtained against Diomampo does not protect LRM from liability for its counterclaims because LRM obtained judgment against Diomampo in a previous action into which this case was consolidated and Cal-Agrex was not a party to that original action when default judgment was entered.

The Tenth Circuit has held that the law of the case applies "to issues previously decided either explicitly or by necessary implication." *Copart, Inc. v. Administrative Review Bd.*, 495 F.3d 1197, 1201 (10th Cir. 2007). In addition, the Tenth Circuit has found the effect of consolidation on a case-by-case basis, recognizing that there are cases in which consolidated cases maintain their separate identities and some where the cases do not. *United States v. Tippett*, 975 F.2d 713, 718 (10th Cir. 1992).

LRM's case against Cal-Agrex was consolidated into this action based on more than just convenience and efficiency. LRM seeks payment for the same product from Cal-Agrex

6

as it did from Diomampo, only under an unjust enrichment claim instead of a breach of contract claim. LRM claims Diomampo was an undisclosed agent of Cal-Agrex when he entered into the August 1, 2006 Agreement. LRM's claims against Diomampo and Cal-Agrex could have been brought at the same time and in the same action had LRM had all of the information regarding the relationship between Cal-Agrex and Diomampo at the time it filed its action against Diomampo. The consolidation in this case has created a single proceeding involving the facts and circumstances regarding LRM's right to payment for the dry milk powder it shipped under the August 1, 2006 Agreement.

Cal-Agrex looks to *United States v. Phillips* as support for its argument that the Judgment against Diomampo does not apply to this action. 59 F. Supp. 2d 1178, 1181 (D. Utah 1999). But *Phillips* was a criminal case that was dismissed on procedural grounds for a violation of the Speedy Trial Act, not a consolidated case. *Id.* at 1188. When the case was re-filed a short time later, the court found that the law of the case doctrine did not apply to suppression rulings which are not final judgments and can be revised at a later point. *Id.*

The present case is entirely distinguishable from *Phillips* because it deals with a final judgment in a consolidated case. The present action is the case that was brought against Diomampo, and the Judgment against Diomampo has not been attacked in any way.

Cal-Agrex's counterclaim seeks to have the court revisit breach of contract issues involving a contract to which it is not a party. Cal-Agrex is neither a party to nor named in the August 1, 2006 contract. Had Cal-Agrex been a defendant in the original action at the time LRM was seeking default judgment, it would not have had standing to oppose the entry of Judgment on a breach of contract issue because it was not a party to the contract. Moreover, Diomampo has

not appeared and attempted to set aside the Judgment.   The prior Judgment is not against Cal-Agrex nor does it name it.  It is well-established that attempts by non-parties to challenge a district court's final judgment generally must fail.  *Southern Utah v. Kempthorne*, 525 F.3d 966, 968 (10th Cir. 2008).

Cal-Agrex improperly claims that the Judgment has no force and effect against it in this case.  The Judgment, however, necessarily determined that Diomampo, and not LRM, was in breach of the August 1, 2006 Agreement.  The Judgment, therefore, precludes Cal-Agrex from arguing that LRM, rather than Diomampo, first breached the August 1, 2006 contract.

Cal-Agrex further argues that because the Judgment was not entered until June 2007, it cannot excuse or justify LRM's tortious interference in 2006.  Cal-Agrex contends that prior to the Judgment in 2007, LRM was under a contractual obligation to supply 300 loads of dry milk to Diomampo.  Cal-Agrex, however, cites to no legal authority for its contention that the date of the Judgment was the first point in time when LRM's duty to ship dry milk under the August 1, 2006 Agreement ceased.  Rather, as soon as Diomampo failed to meet the express payment terms of the August 1, 2006 contract, he was in breach and LRM was entitled to cease performance under the contract, i.e., cease delivery.

Under the first breach rule, "one party's material breach of a contract will excuse the other party from performing his reciprocal obligations due under the same contract."  *Murphy Oil USA Inc. v. Wood*, 438 F.3d 1008, 1023 (10th Cir. 2006).  Failure to pay as required under an agreement constitutes a material breach.  *Id*. at 1015.  Therefore, "a party first guilty of a substantial or material breach of contract cannot complain if the other party thereafter refuses to perform."  *Bonneville v. Green River Dev't*, 2007 UT App 275 ¶ 33, 164 P.3d 433, 442 (2007).

In this case, by the time LRM ceased shipment of the dry milk in November 2006, Diomampo had already breached the August 1, 2006 contract by failing to make payment on the dry milk that LRM had shipped. As of November 2006, as confirmed by this court's Judgment in June 2007, LRM had no duty to continue shipment of dry milk when Diomampo failed to pay over $1.6 million due for dry milk shipments already made under the August 1, 2006 Agreement.

The court concludes that an alleged breach of a contract based on LRM's non-shipment of dry milk is insufficient to support a claim of interference by improper means because this court ruled in its Judgment against Diomampo that Diomampo breached the August 1, 2006 Agreement and LRM had no duty to ship additional dry milk under the agreement.  LRM's October email to Diomampo stating that there would be a shortage of dry milk to ship did not put LRM in breach of the Agreement.  When Cal-Agrex sent out a letter to its customers, it notified them of LRM's anticipated breach.  In this letter even Cal-Agrex acknowledges that LRM was not in breach of the Agreement at that time.

Furthermore, the claims against LRM's supplier, Jerry Goodwin, are without merit because he was not a party to the August 1, 2006 Agreement, had no contractual obligations regarding the shipment of the dry milk, and there are no factual allegations regarding any improper conduct on his part.  Cal-Agrex conflates LRM with Goodwin.  Cal-Agrex failed to address any of LRM's arguments that Goodwin should be dismissed or provide any specific analysis relating to Goodwin.  The court, therefore, dismisses the Third-Party Complaint against Goodwin.

Accordingly, the court grants LRM and Goodwin's joint motion to dismiss Cal-Agrex's Counterclaim and Third-Party Complaint.  The court does not find it necessary to

address the issues regarding the sufficiency of Cal-Agrex's factual allegations with respect to its claims.

## CONCLUSION

For the reasons stated above, Counter Defendant Lehi Roller Mills and Third-Party Defendant Jerry Goodwin's Joint Motion to Dismiss Cal-Agrex, Inc.'s Counterclaim and Third-Party Claim is GRANTED.

DATED this 19th day of February, 2009.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge

10